The answer of Philip Miller stated that Nancy Miller, having attained the age of 32 years without marrying, and with no particular prospect of marriage in view, requested the defendant's intestate, Philip Miller, to make some provision for her in such way that she should have a maintenance for her life, and that in case of her marrying and leaving issue, the property then settled should go to her children; but in case she did not marry or leave issue, then that the property should return to the family of Philip Miller; that deeming the request reasonable, Philip Miller made and subscribed an unsealed paper-writing, the purport of which was that Nancy should have Essex and Judith and her increase during the natural life of Nancy, and then the property to be disposed of according to the contingencies mentioned above; that this paper was witnessed and delivered to the witness with a distinct understanding between all parties concerned that it was only made to secure the provision for Nancy in the event of her father's suddenly dying without a will, but that it should be subject to any alteration he might think proper to make by will; that the only consideration was the affection which he felt for his daughter, nor was any consideration of any kind mentioned in the paper. Some time afterwards, in a conversation between (221) Philip Miller, Nancy, and her brother, William Miller, it was suggested that, to prevent accidents from death, it would be well to have the paper recorded, and it was delivered to Philip Miller for that purpose. It happened, however, that he did not attend the next term of the court which occurred, and before another term occurred Nancy went to the house of Philip Miller and told him that, as it was not recorded, it might as well be let alone altogether; that she was willing her father should take back the right; and that what she was to have, Philip Miller might give her by his will; and this being acceded to, no further care was taken of the paper, which is now lost or mislaid.
The allegations in the bill as to the deed of gift of the female slave are sufficiently made out by proof, and there seems to be little doubt of the deed of gift having been placed in the hands of Miller for the purpose of being registered. But the objection made to setting *Page 101 
up the deed is that, after the defendant had it in his possession, his daughter agreed to waive all claim under it, and trusted to her father making a provision for her by his will. Her declarations to this effect were frequent a very few days before her marriage, and in point of fact it is established. This seems to be one of the cases where a written agreement may be so far waived by parol that it may be a defense to a bill for a specific execution; for it was here an entire abandonment and dissolution of all claim by virtue of the deed, and restoring the parties to the situation they were in before it was made. But it may well be questioned whether, if this were not a solid ground of defense, this Court would feel justified in setting up the agreement so as to give it a different operation from what the parties intended. That was that if the daughter died without children, the slaves should return to the family. The husband made no settlement, and was apprised of the circumstances of his wife before marriage; his equity is at best doubtful. The bill must be dismissed. (222)